### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Case No.: 22-cv-2945

**MICHELLE MARKWARDT,**

      Plaintiff,

v.

**SHERIFF TONY SPURLOCK, in their individual and official capacity,**
**MORGAN STANTON, in their individual and official capacity,**
**COURTNEY ANDERSON, in their individual and official capacity,**
**MINDY SANCHEZ, in their individual and official capacity,**
**DR. DAVID ADKINSON, in their individual and official capacity,**
**SARAH PINCUS, in their individual and official capacity,**
**LAURA MERILLAT, in their individual and official capacity,**
**BIANCA ORTIZ, in their individual and official capacity,**
**DR. PHILIP STEININGER, in their individual and official capacity,**
**SHONDA SCHOEPKE, in their individual and official capacity,**
**DEPUTY MATHIS (#0626), in their individual and official capacity,**
**LENI SUTTON, in their individual and official capacity,**
**DEPUTY I. HUTCHEON (#0522), in their individual and official capacity,**
**RANDI FIELDS, in their individual and official capacity,**
**DEPUTY J. BARRELLA (#1610), in their individual and official capacity,**
**DEPUTY SEEMAN (#1941), in their individual and official capacity,**
**STG. CLARKSON, in their individual and official capacity,**
**EMILY BARRON, in their individual and official capacity,**
**DOUGLAS COUNTY SHERIFF'S OFFICE, a municipality,**

      Defendants.

---

### COMPLAINT AND JURY DEMAND

---

COMES NOW, Plaintiff, Michelle Markwardt, by and through his counsel of record, BAUMGARTNER LAW, LLC, and respectfully submits this Complaint against the Defendants, and alleges and avers as follows:

## JURISDICTION AND VENUE

1.     This action is brought pursuant to 42 U.S.C. §1983 and §1988, and the Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343(a)(3) and (4), and the aforementioned statutory and constitutional provisions.

2.     Venue is proper in the United States District Court for the District of Colorado pursuant to 28 USC §1391(b) because the Defendants are citizens and residents of Colorado, and the events, acts and/or omissions giving rise to this action occurred in Colorado.

## PARTIES

3.     Plaintiff, Michelle Markwardt, is and was at all relevant times a citizen of the State of Colorado, residing and domiciled in Aurora, Colorado.

4.     Defendant, Sheriff Tony Spurlock ("Sheriff"), is and was at all relevant times a Colorado law enforcement officer duly elected to office with final policy-making authority over the Douglas County Jail ("The Jail") and its Sheriff's Deputies.

5.     At all relevant times, the Sheriff was responsible for supervising, enacting, and enforcing Douglas County Sheriff's conduct, policies, and practices; the absence of necessary policies and practices; and for the hiring, retention, supervision, and training of employees and agents of the Douglas County Sheriff's Office.

6.     At all relevant times, Douglas County Sheriff's Office had a non-delegable duty to provide inmates including Ms. Markwardt with necessary medical care and treatment from qualified medical providers that meets a community standard of care.

7.     Defendant Morgan Stanton ("Defendant Stanton") is and was at all relevant times a nurse practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

8.     Defendant Courtney Anderson ("Defendant Anderson") is and was at all relevant times a nurse practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

9.     Defendant Mindy Sanchez ("Defendant Sanchez") is and was at all relevant times a nurse practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

10.     Defendant Dr. David Adkinson ("Defendant Adkinson") is and was at all relevant times a physician practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

11.     Defendant Sarah Pincus ("Defendant Pincus") is and was at all relevant times a nurse practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

12.     Defendant Laura Merillat ("Defendant Merillat") is and was at all relevant times a nurse practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

13.     Defendant Bianca Ortiz ("Defendant Ortiz") is and was at all relevant times a nurse practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

14.     Defendant Dr. Philip Steininger ("Defendant Steininger") is and was at all relevant times

a physician practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

15.     Defendant Shonda Schoepke ("Defendant Schoepke") is and was at all relevant times a nurse practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

16.     Defendant Deputy Mathis ("Defendant Mathis") is and was at all relevant times a deputy in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

17.     Defendant Leni Sutton ("Defendant Sutton") is and was at all relevant times a nurse practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

18.     Defendant Deputy Hutcheon ("Defendant Hutcheon") is and was at all relevant times a deputy in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

19.     Defendant Randi Fields ("Randi Fields") is and was at all relevant times a nurse practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

20.     Defendant Deputy Barrella ("Defendant Barrella") is and was at all relevant times a deputy in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

21.     Defendant Deputy Seeman ("Defendant Seeman") is and was at all relevant times a deputyin the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

22.     Defendant Sgt. Clarkson ("Defendant Clarkson") is and was at all relevant times a deputy in the Douglas County Jail under the supervision of the Douglas County Sheriff's Office.

23.     Defendant Emily Barron ("Defendant Barron") is and was at all relevant times a nurse practicing in the Douglas County Jail under the supervision of the Douglas County Sheriff's

Office.

24.     Douglas County Jail ("the jail") is and was

## FACTUAL ALLEGATIONS

25.     On October 29, 2020, Michelle Markwardt was sentenced for a second DUI within five years in Douglas County, CO.

26.     During the sentencing hearing Ms. Markwardt's attorney S. Birk Baumgartner made a plea for medial release in lieu of incarceration pursuant to CRS §18-1.3-106.

27.     In addition, Mr. Baumgartner argued that if Ms. Markwardt would not be granted medial release and incarcerated the jailing will constitute cruel and unusual punishment.  This statement in regard to cruel and unusual punishment unfortunately proved to be made auspiciously because of the Douglas County Jail and a number of Douglas County Sheriff's deputies future conduct as set forth herein.

28.     At the sentencing hearing Mr. Baumgartner specifically informed Judge Susan Meissner-Cutler, now retired, that Ms. Markwardt suffered from serious conditions including epilepsy, cyclical vomiting syndrome, and other medical conditions that are not only are highly embarrassing but also require constant and significant medical supervision, attention and care, and importantly, a special diet.  Mr. Baumgartner informed the Court that without this care, Ms. Markwardt's health would be severely compromised.

29.     During the sentencing hearing a regular provider of medical care to Ms. Markwardt, Nurse Practitioner Maureen Parker, testified on Ms. Markwardt's behalf.

30.     Specifically, Ms. Parker indicated to Judge Meissner-Cutler that she treated Ms.

Markwardt for two years and addressed issues of malnutrition due to cyclical vomiting syndrome. Pointedly, Ms. Parker made clear that Ms. Markwardt had at times weighed as little as 84 pounds and had significant problems keeping food in her system during times of high stress. Jail is without question, even for a few days, a highly stressful experience.

31.    Ms. Parker also made it clear to the Court that Ms. Markwardt was on a number of medications to handle psychological ailments in addition to her numerous physical conditions.

32.    During her testimony Ms. Parker made the following statement:

a.   "...She's [Ms. Markwardt] had seven emergency rooms visits between February of this year and September of this year. She is frequently admitted for dehydration and her --a low potassium level related to her cyclical vomiting. And low potassium levels can result in death. She makes her appointments on a regular basis and is currently under the care of a gastroenterologist, who is doing a variety of testing to see if there are any other issues that have not yet been discovered that are contributing to the repetitive vomiting episodes and her inability to maintain her nutritional status. As I mentioned, she has been cachectic in the past, which means that she has low body mass and a very compromised nutritional status, which of course, can affect her immune systems."

33.    Ms. Parker also testified to Ms. Markwardt's mental health conditions such as generalized anxiety disorder, post-traumatic stress disorder ("PTSD") and of significant importance panic disorder.

34.    Nonetheless, Judge Miesner-Cutler stated that Douglas County has one of the best jails in Colorado and that they are more than capable of taking care of all her medical needs. Specifically, Judge Meisner-Culter said: "...I can't imagine a safer place for you to be doing a jail sentence...I

6

have no doubt that the jail with its fine medical facility, will be able to manage Ms. Markwardt and her medical condition.  However, if they are not then I am assuming that they would let me know otherwise and would refer Ms. Markwardt to some medical facility here in Douglas County that would meet the requirements of the statute."

     a.  Judge Meisner-Cutler in these specific statements is acknowledging that under CRS §18-1-1.3-106 a person can be confined to a hospital/treatment-facility so long as they are not free to leave despite earlier claims to the contrary.

     b.  More pointedly, Judge Meisner-Cutler wanted Ms. Markwardt to go to jail despite knowing of her severe conditions and acknowledging that there are alternatives to incarceration.

     c.  The reality here is that Judge Meisner-Cutler could have ordered that Ms. Markwardt be confined in a hospital that would "meet the requirements of the statute" but the serious conditions notwithstanding desired Ms. Markwardt experience the pains of incarceration – albeit not likely to the degree that would inevitably be experienced.

35.    Prior to being incarcerated Ms. Markwardt fully informed the Douglas County Sheriff's Office of her conditions, needs for care/supervision, and required medications.

36.    Ms. Markwardt's husband also dropped off all of her medication o the jail during Mr. Markwardt's jail intake. The jail documented that they were in receipt of and aware of all of her required medications.

37.    As detailed below, the Douglas County Jail did not provide Ms. Markwardt with any of her necessary medications, did not make a single accommodation for her dietary requirements, and refused to provide her with necessary medical treatment despite the obvious signs that she was

7

close to dying without it. After being incarcerated for ten days in Douglas County with its fine medical facility Ms. Markwardt would be released in such a condition that she had to be immediately rushed to the emergency room for life-saving care. The emergency physicians told Ms. Markwardt that if she had stayed in the Douglas County jail for another 24 hours, she would have died due to neglect of her medical needs.

38.     As a result of this willful disregard for her medical needs, Ms. Markwardt has suffered permanent medical injuries.

39.     Ms. Markwardt was wrong.  For the first four (4) days of her ten-day incarceration, Ms. Markwardt was not provided with her medications or food that her body could digest.  Within hours Ms. Markwardt would begin vomiting because she was unable to keep food in her system without medications and because she was given food she specifically and repeatedly told the staff she could not digest.

40.     Ms. Markwardt constantly requested her medications and informed deputies as to what type of food she could eat and digest, but she was intentionally ignored.  The jailers simply did not care about Ms. Markwardt or their responsibilities to her as a ward of the Douglas County Sheriff's Office.

41.     At times, Ms. Markwardt's vomit would be mixed with blood.  The jailers were well aware of this because Ms. Markwardt told them, and because they observed this, but they simply did not care.

42.     As a result, Ms. Markwardt was unable to eat any food and lost twenty pounds during the ten days she was in the Douglas County jail. Not only was Ms. Markwardt malnourished because she was not provided food she could properly digest, but her medications were also withheld.

43.     Vomiting was not Ms. Markwardt's only problem.  The stress and fear she experienced at not being able to digest food triggered her mental health problems, which also required medication, and triggered what appear to be multiple seizures and eventual epileptic episodes.

44.     Ms. Markwardt surrendered to the Douglas County jail on November 12, 2020, at approximately 5:45 p.m., and at this time surrendered all of her necessary medications.

45.     When Ms. Markwardt surrendered her medications, she informed the jail personnel that she needed her medications regularly or else she would suffer severe adverse health consequences.

46.     After surrendering her medications, Ms. Markwardt was forced to wait more than 8 hours before she was processed into the jail. Defendant Anderson performed the medical evaluation and intake of Ms. Markwardt, and this evaluation and intake would confirm what Ms. Markwardt feared: that the Douglas County sheriff's department would not provide her with her necessary medications and that she was going to suffer greatly over the next ten days.

47.     At 2:01 a.m., Defendant Anderson began her intake by asking a series of questions of Ms. Markwardt, which included receiving a list of her medications.

48.     Ms. Markwardt informed Defendant Anderson that she had not had her nightly regimen of required medications because of the more than eight hours wait for processing. Ms. Markwardt pleaded with Defendant Anderson that she could not go without her medications for any longer.

49.     However, Defendant Anderson informed Ms. Markwardt that the Douglas County Jail does not expedite medications for inmates, and that Ms. Markwardt would have to wait for her medications to be approved by the jail medical staff, just like everyone else.

50.     Among the medications that Ms. Markwardt informed Defendant Anderson that she was required to take were Gabapentin, which she took to prevent seizures, and Klonopin, which she

took daily for severe anxiety, and which also helped to prevent seizures.

51.     Defendant Anderson also noted that Ms. Markwardt required a special diet, and that she would experience nausea, vomiting, dehydration, and headaches if not given her medically required diet.

52.     Defendant Anderson is a nurse and knew or should have known that withholding these medications, among the others required by Ms. Markwardt has an almost certain chance of resulting in severe medical outcomes for any patient.

53.     Defendant Anderson knew or should have known that forcing Ms. Markwardt to eat the regular diet provided to other inmates would cause Ms. Markwardt to have violent allergic reactions and would further cause her to have serious adverse medical reactions.

54.     Despite this knowledge and Ms. Markwardt's dire warnings, Defendant Anderson took no steps whatsoever to avoid the certain harm that would result from withholding these crucial medications.

55.     Defendant Anderson even documented that Ms. Markwardt was so concerned about being denied medication that she was in tears. Yet Defendant Anderson consciously and deliberately ignored Ms. Markwardt's medical needs.

56.     In fact, Defendant Anderson was informed and noted that at 2:18 a.m. on November 13, 2020, Ms. Markwardt was already experiencing adverse effects from denial of her medications, including a headache, and an upset stomach. Defendant Anderson took no steps to address Ms. Markwardt's obvious medical needs, even though it was obvious at eight hours without her medications that she was beginning to experience severe effects.

57.     Defendant Anderson was even told that Ms. Markwardt had previously experienced severe

medical consequences from being denied her medications, including seizures.

58.     Defendant Anderson even noted that Ms. Markwardt should be placed on a lower bed because of the risk of seizures.

59.     Despite all of this, Defendant Anderson placed Ms. Markwardt in general population and inexplicably noted that Ms. Markwardt had no active symptoms. Again, Defendant Anderson took no steps whatsoever to prevent her from the certain consequences of withdrawal from her medications.

60.     Defendant Anderson had a duty to make certain that Ms. Markwardt was provided her necessary medications, and that her doctor was made aware of her ongoing medical condition, including her obvious symptoms of withdrawal, and the danger of having a seizure.

61.     Defendant Anderson failed to take any action whatsoever, other than to falsely claim that Ms. Markwardt had no active symptoms

62.     On November 13, 2020, at 1:10 p.m., Defendant Stanton examined Ms. Markwardt, and similarly failed to take any action in response to Ms. Markwardt's obvious need for medical intervention.

63.     Additionally, Defendant Stanton deliberately falsified Ms. Markwardt's records concerning her withdrawal symptoms. Although Ms. Markwardt was visibly exhibiting symptoms of dangerous withdrawal at this time, Defendant Stanton marked in the medical record that Ms. Markwardt was not experiencing these symptoms, including weakness, headaches, fatigue, lack of sleep, difficulty concentrating, tremors, failure to eat because of lack of appetite, nausea and vomiting. Ms. Markwardt was experiencing all of these symptoms and more, but Defendant Stanton deliberately ignored them, even though at this time, Ms. Markwardt's medical condition

was deteriorating rapidly, and any person could see that she required immediate medical attention from a doctor.

64.     Ms. Markwardt was told that she could not see a doctor because the jail was understaffed due to Covid-19. However, rather than call emergency medical services and have Ms. Markwardt taken to a hospital, Defendant Stanton simply lied on Ms. Markwardt's medical records.

65.     Later that same day, November 13, 2020, at approximately 5:00 p.m., Defendant Mindy Sanchez called Defendant Adkinson to review Ms. Markwardt's necessary medications.

66.     Rather than conduct an examination of Ms. Markwardt, or even review her medical records, Defendant Adkinson simply refused to approve the medications that her regular doctor prescribed for years. Defendant Adkinson made no attempt to evaluate the medical effects that this drastic change in medication would have on Ms. Markwardt, and deliberately refused to inquire into any of her records or medical needs.

67.     As clear evidence of his deliberate indifference, Defendant Adkinson prescribed a course of 30 days of substitute medications when Ms. Markwardt was only to be incarcerated for a total of 10 days. Defendant Adkinson was obviously not providing any actual medical care to Ms. Markwardt when he changed her prescription. Rather, he was changing the course of her healthcare and treatment with deliberate indifference to the dire medical condition that she was in.

68.     Defendant Adkinson's actions would have almost immediate and disastrous consequences for Ms. Markwardt.

69.     The same day, another nurse, Defendant Pincus evaluated Ms. Markwardt and noted that her vital signs were well outside of safe parameters and required immediate notification to a medical doctor. Defendant Pincus noted that she did contact Defendant Adkinson. However, Dr.

Adkinson took no action, and Defendant Pincus took no further action to secure necessary medical treatment for Ms. Markwardt. Ms. Markwardt was told that she was not being taken to the medical ward of the jail because they providers at the jail were to busy with Covid-19 patients. However, neither Defendant Pincus nor Defendant Adkinson took any reasonable and necessary steps to provide Ms. Markwardt wit necessary care, such as calling EMS to transport her to the hospital where she could receive necessary care.

70.     Within several hours, in the early morning hours of November 14, 2020, Ms. Markwardt suffered a highly predictable, severe medical event: she suffered a seizure and loss of consciousness.

71.     Defendant Merillat assessed Ms. Markwardt after the seizure event, but like all other Defendants, failed to take any reasonable and necessary steps to provide Ms. Markwardt with necessary medical care.

72.     Knowing that Ms. Markwardt had a history of seizures, that her previous evaluation just hours earlier showed her vital signs indicated that she was in acute medical distress and, knowing that she had just experienced an acute medical event, Defendant Merillat refused to call a medical doctor as required, and refused to have Ms. Markwardt taken to the medical ward of the jail. She refused to call EMS to transport Ms. Markwardt to the hospital where she could be seen by a medical doctor.

73.     Instead of taking any of these reasonable and necessary steps, Defendant Merillat simply discussed with Ms. Markwardt, who was now delirious, ways to handle anxiety while in jail. Ms. Merillat then concluded her wholly inadequate treatment of Ms. Markwardt by marking that she was in good condition, and that she did not need immediate medical care.

74.     Later that morning, Defendant Ortiz evaluated Ms. Markwardt, whose condition had continued to deteriorate.

75.     Defendant Ortiz noted that Ms. Markwardt had not eaten any food for some time. Defendant Ortiz was aware that Ms. Markwardt was unable to digest the food she was being provided but made no effort at all to secure a diet that she could consume and digest.

76.     By this time, Ms. Markwardt was experiencing severe intestinal and digestive effects of being forced to consume food her body could not digest. She was vomiting, was experiencing intestinal cramping, and had developed severe diarrhea.

77.     Defendant Ortiz noted that Ms. Markwardt's vital signs were still dangerously outside of safe parameters, and she noted that her "Benzodiazapine Withdrawal Score" ("BWS") required her to call the medical doctor. Defendant Ortiz noted that she contacted Defendant Steininger. However, neither Defendant Steinenger nor Defendant Ortiz took any action to provide Ms. Markwardt with necessary medical care.

78.     Rather than order that Ms. Markwardt be provided with a suitable diet that she could digest, or even call for Ms. Markwardt to be brought to him for a medical evaluation, Defendant Steininger simply ordered a set of over-the-counter medications to treat nausea, diarrhea, cramping and pain. However, Defendant Steininger did not personally evaluate Ms. Markwardt, or review her medical records, or take any other steps to provide her with minimally adequate medical care.

79.     Defendant Pincus next evaluated Ms. Markwardt late in the morning of November 14, 2020, but failed to accurately note her condition. For example, even though Ms. Markwardt was experiencing weakness, fatigue, difficulty concentrating, fear, tension, headache, muscle pain and extreme distress, Defendant Pincus marked these as non-existent or severely minimized these

14

symptoms on Ms. Markwardt's chart.

80.    Defendant Ortiz then evaluated Ms. Markwardt in the early afternoon of November 15, and although Ms. Markwardt's BWS required notification to the medical doctor, she failed to do so. Defendant Ortiz falsely documented Ms. Markwardt's worsening condition on her chart. For example, even though Ms. Markwardt was experiencing a severe headache, was very agitated, had muscle pain, and was unable to eat the food she was provided, Defendant Ortiz continued to falsely record that these symptoms were not present.

81.    By this point, Ms. Markwardt had not been able to digest any of the food she was provided, and was in severe decline, but neither Defendant Ortiz nor Defendant Steininger, the medical doctor on duty, took any steps to stabilize her condition or to provide her with any medical care at all.

82.    By this point, Ms. Markwardt was noticeably losing weight, was vomiting blood, and had not been able to consume any substantial food at all without throwing it up. She had severe diarrhea, had scored above the critical score on the BWS three times, and had already had one acute medical event causing her to lose consciousness. At this point, the fact that Ms. Markwardt was in desperate need of medical care was visibly obvious to any person, with or without medical training. Despite all of this, she had still never been seen by a doctor, and no nurse took any steps to provide her with necessary medical care, such as calling an ambulance to take her to a hospital.

83.    Late in the night of November 15, 2020, Defendant Pincus again evaluated Ms. Markwardt. Once again, Defendant Pincus falsified Ms. Markwardt's records in order to minimize the severity of her medical condition.

84.    Ms. Pincus did note that for the fourth time, Ms. Markwardt's BWS score required her to

notify a medical doctor of her condition. However, she was never seen by the doctor on duty, Defendant Steininger, who had a duty to provide her with medical treatment at this time. Both Defendant Pincus and Defendant Steininger once again failed to provide any necessary medical care.

85.     Mid-day on November 16, 2020, Ms. Markwardt was evaluated by Defendant Pincus, who once again minimized the severity of Ms. Markwardt's medical condition. Despite this, Ms. Markwardt's BWS score for the fifth time required notification to the attending doctor, Defendant Steininger. Once again, both Defendant Steininger and Defendant Pincus failed to provide any necessary medical treatment to Ms. Markwardt, despite her visibly obvious medical distress.

86.     On the evening of November 16, Ms. Markwardt was evaluated by Defendant Ortiz, and once again, Defendant Ortiz minimized and falsified the records concerning Ms. Markwardt's medical condition. Despite this, Ms. Markwardt's BES score for the sixth time required notification to the attending doctor. However, Defendant Steininger once again failed to take any action whatsoever.

87.     Despite Defendant Ortiz seeing Ms. Markwardt's condition deteriorate in front of her, and despite knowing that Defendant Steininger failed to take any action, Defendant Ortiz did absolutely nothing.

88.     Just before midnight on November 16, 2020, Defendant Schoepke evaluated Ms. Markwardt, and began a "Substance Abuse Withdrawal Order Sheet" even though Ms. Markwardt did not abuse any substances. Defendant Schoepke knew that Ms. Markwardt was not a drug abuser, and that there was no need to start a substance abuse withdrawal protocol but did so anyway. In fact, Defendant Schoepke did not indicate a single substance she believed Ms.

Markwardt to be abusing.

89.     Defendant Shoepke was aware that Ms. Markwardt was in acute distress due to being denied her prescribed and necessary medication for 4 days, but she took no steps to provide adequate and necessary medical care. Instead, Defendant Schoepke

90.     At this point, all of the defendant nurses were aware that Ms. Markwardt was experiencing severe muscle aches, generalized pain, abdominal cramping, diarrhea, vomiting blood, nausea, and had not been able to eat any of the food she had been given.

91.     On November 17, 2020, Ms. Markwardt was again evaluated by Defendant Pincus, who once again minimized the condition that Ms. Markwardt was in. Despite having 14 markers for the BWS score, Defendant Pincus stated that she had 12, which was still outside of the acceptable range and required notification to the on-duty doctor, believed to be Defendant Steininger. This was the seventh time that a doctor was ostensibly notified regarding Ms. Markwardt's high BWS score, but still no doctor ever bothered to examine her in any way, or to take any steps whatsoever to provide her minimally necessary medical treatment.

92.     At approximately 1:00 p.m. on November 17, 2020, one of the corrections officers, Defendant Deputy Mathis noted in a separate incident report that Ms. Markwardt had not eaten for at least eight (8) meals, looked very emaciated, and had very little color. Deputy Mathis noted that she was coming off of heroin, which was absolutely false, and that he had spoken to Defendant Sutton, who was made aware of the situation.

93.     Even if Ms. Markwardt was a withdrawing heroin addict, which she was not, Defendant Mathis clearly saw that she was in dire need of medical attention, and he had a duty to provide her with medical. Instead, he asked Defendant Sutton to get her some Gatorade, and nothing more.

94.     Defendant Sutton, being fully advised of Ms. Markwardt's dire medical condition at approximately 1:00 p.m. on November 17th, did absolutely nothing as well.

95.     By this time, the documentation by the staff at the Douglass County Jail makes is apparent that they have created a false narrative that Ms. Markwardt was a drug addict and was experiencing severe narcotic withdrawal. The truth, however, was that the staff was affirmatively killing her quite quickly and refusing to take any steps toward providing her any reasonable medical care at all.

96.     Just hours after Defendant Mathis's report, Ms. Markwardt had her second seizure. Defendant Hutcheon noted that she had not eaten in several days and looked very thin. Defendant Hutcheon observed Defendant Stanton call Ms. Markwardt over to the "medical cart" at which time she became dizzy and fell over, hitting her head. Rather than calling for EMS, or a doctor to examine her, Defendants Stanton and Hutcheon put Ms. Markwardt back into her cell, where Defendant Hutcheon noticed that Ms. Markwardt's bed sheets were covered in blood from her vomiting.

97.     Unbelievably, still no doctor came to examine Ms. Markwardt, and still no one called an ambulance. Defendant Hutcheon gave Ms. Markwardt a sack lunch and Defendant Stanton called Defendant Shoepke to come and evaluate Ms. Markwardt.

98.     When Defendant Schoepke arrived, Ms. Markwardt pleaded with her for her medication, and Defendant Shoepke explained once again that Douglas County Jail has no procedure for her, even in an acute condition, to receive her medications in an expedited manner.

99.     Defendant Schoepke falsely recorded that Ms. Markwardt was experiencing withdrawal from fentanyl. Defendant Schoepke notes that she reiterated the importance of staying hydrated to

Ms. Markwardt.

100.    Defendant Schoepke completely failed to provide any medical care whatsoever to Ms. Markwardt, even after she had lost consciousness for the second time, had not eaten in days, observed that she was delirious, and that her bedsheets were covered in blood. It is unknown if the medical doctor on staff was notified of this obvious medical emergency in which Ms. Markwardt was now in. However, no defendant who witnessed her in this state did anything at all to provide any care whatsoever.

101.    Two and a half hours later, Defendant Stanton once again evaluated Ms. Markwardt, and once again utterly failed to provide any meaningful medical care. Defendant Stanton was aware that Ms. Markwardt needed to be taken to a hospital immediately, but instead of calling for help, she once again minimized her medical condition on her chart. For the eighth time, Ms. Markwardt's BWS score was so high that notice to the medical doctor was required.

102.    It defies reason to believe that the doctor on duty, Defendant Steininger, was not notified of Ms. Markwardt's second loss of consciousness, or her bloody vomit. Yet still no doctor ever came to examine her, and she was not taken to the medical ward. She was simply examined in her bloody sheets and told to drink Gatorade.

103.    Ms. Markwardt was not evaluated for fourteen hours after she fell for the second time. At this point, it has become clear that the medical staff at the Douglas County Jail is simply ignoring Ms. Markwardt and is relying on a falsified narrative that she is a drug addict.

104.    On November 18, 2020, Defendant Stanton once again evaluated Ms. Markwardt, and once again simply lied on her medical chart. For example, despite the fact that Defendant Stanton knew very well that Ms. Markwardt had not eaten in days, she marked that Ms. Markwardt had no issues

completing her meals. Despite the falsification of the records, Defendant Stanton still noted that Ms. Markwardt's BWS was far too high for the ninth time. However, Defendant Stanton knew that no doctor would come to provide care, and yet she took no steps whatsoever to provide minimal medical care, despite the desperate medical condition that she observed Ms. Markwardt to be in.

105.    Defendant Steininger was once again notified, but once again didn't even bother to lay eyes on Ms. Markwardt.

106.    Ms. Markwardt was next evaluated by Defendant Fields, who made no effort at all to hide the falsification of the medical records. Despite Ms. Markwardt exhibiting clear signs of distress for every field of inquiry, Defendant Fields simply lied on every single input area, and stated that Ms. Markwardt was almost perfectly healthy. Of course, Defendant Fields failed to take any appropriate or minimally necessary steps to treat Ms. Markwardt, who was in obvious visible medical distress.

107.    Defendant Stanton once again evaluated Ms. Markwardt on November 19, 2020, around noon, but once again failed to provide any necessary and/or minimal medical care despite Ms. Markwardt's obvious visible distress. Defendant Stanton simply continued the pattern she had established to that point.

108.    Defendant Pincus evaluated Ms. Markwardt on the evening of November 19, 2020, and once again she failed to provide minimal medical treatment despite Ms. Markwardt's obvious visible need for immediate care.

109.    During this evaluation, Ms. Markwardt's BWS required notification to the attending doctor for the tenth time. Once again, no doctor bothered to even look at her.

110.    On November 20, 2020, Ms. Markwardt was evaluated by Defendant Stanton, who marked

that Ms. Markwardt was not eating or drinking. Indeed, by this time, Ms. Markwardt had lost approximately fifteen percent of her body weight in seven days, and her physical condition was simply horrifying. However, despite noting that Defendant Schoepke knew Ms. Markwardt was not eating or drinking Defendant Stanton falsely claimed that there were no other signs of withdrawal.

111.    At approximately noon on November 20, 2020, Defendant Barrella noted that he observed Ms. Markwardt and that she had not eaten for five meals. He noted that he informed Defendant Stanton of this. However, despite the clearly visible and acutely obvious need for immediate medical treatment, Defendant Barrella also failed to take any action whatsoever.

112.    At approximately 6 pm on November 20, 2020, Ms. Markwardt once again lost consciousness and fell to the ground, seizing, and striking her head. Defendant Seeman noted the time and nature of this incident, although Defendants Stanton and Schoepke told the deputy that this was normal, and neither reported the incident independently.

113.    Of course, neither Defendant Schoepke nor Stanton took any steps whatsoever to provide any medical treatment.

114.    During this episode, Defendant Clarkson observed the entire assessment and was informed of Ms. Markwardt's medical condition. However, despite the clearly visible and acutely obvious need for immediate medical treatment, Defendant Clarkson also failed to take any action whatsoever.

115.    On November 21, 2020, Defendant Pincus once again evaluated Ms. Markwardt, and once again failed to take any action despite the obvious need for immediate medical intervention. During this evaluation Defendant Pincus noted that for the eleventh time, Ms. Markwardt's BWS score

required notification to the attending doctor. However, once again, no doctor even looked at Ms. Markwardt.

116.    On November 21, 2020, at approximately 1:00 p.m., Defendant Barrella made a separate incident report in which it was noted that Ms. Markwardt had not eaten for eight meals in a row, and that Defendant Barron was notified. Defendant Barron did note that Ms. Markwardt had not eaten eight meals in a row. However, despite the obvious need for immediate medical attention, neither Defendant Barron nor Defendant Barrella took any steps whatsoever to provide any medical treatment.

117.    On November 22, 2020, Ms. Markwardt was finally released from the Douglas County jail. At the time of her release, she weighed 78 pounds and was very near death.

118.    At any time during her incarceration, Ms. Markwardt could have been spared the excruciating torment simply by the administration of her prescribed medications, and the provision of adequate food that she could digest. At any time during her incarceration, she could have been spared the pain and suffering she endured if even one person at the jail had called for EMS to transport her to a hospital for medical treatment.

119.    Since at least the second day of incarceration, her need for medical treatment was obvious to any layman and was especially obvious to the medical staff that examined her but refused to provide any treatment at all.

120.    Once Ms. Markwardt was released from the Douglas County Jail, she was admitted to Parker Adventist Emergency Room, where she was immediately put into the intensive care unit. The doctor treating her there told Ms. Markwardt and her family that she would likely have died if she spent another day at the Douglas County Jail.

## CAUSES OF ACTION

**First Cause of Action**
***Failure to Provide for Serious Medical Needs***
***(Eighth and Fourteenth Amendments of the United States Constitution –***
***Against All Defendants)***

121.    Plaintiff hereby incorporates all prior paragraphs and allegations.

122.    In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) the court held that the deliberate indifference to the serious medical needs of a prisoner is conceptualized as the unnecessary and wanton infliction of unnecessary pain which is a violation of the Eighth Amendment.

123.    Prior to her incarceration Ms. Markwardt made it clear to the sentencing court and then fully informed the Douglas County jail of her serious and documented medical conditions and the care she would require through special dietary accommodations and medication.

124.    None of her needs were met for at least ten days.

125.    After at most the third day of incarceration, her need for immediate medical attention was obvious to any person who looked at her.

126.    Ms. Markwardt continually complained to sheriff's deputies and medical staff and requested medical attention.  Despite clear evidence of Ms. Markwardt's pain and discomfort the deputies and the medical staff intentionally ignored her pleas and were thereby deliberately indifferent to her suffering.

127.    Defendants Adkinson and Steininger simply refused to provide any care whatsoever to Ms. Markwardt at any time.

128.    Defendant nurses failed to fulfill their gatekeeper roles by failing to contact Dr. Steininger when they saw that Ms. Markwardt was in immediate need of medical treatment, including but not limited to the three times that she lost consciousness and fell.

129.     Defendant Nurses denied Ms. Markwardt medical treatment when they deliberately falsified their medical records concerning Ms. Markwardt's condition and BWS scores.

130.     The Defendant Deputies saw the desperate condition that Ms. Markwardt was in and failed to call for appropriate medical treatment including calling for an ambulance to treat Ms. Markwardt's obvious serious medical condition.

131.     The Deputies at the Sheriff's department, and any of the medical staff could easily have provided medical care at the facility and could also have easily transported Ms. Markwardt to a nearby hospital, as her family did after picking her up from the jail when she was released.

132.     As a result of the Douglas County sheriff's deputies and medical staff's, deliberate indifference Ms. Markwardt suffered immensely while incarcerated and required significant medical care after being released from custody.

## Second Cause of Action
### 42 U.S.C. §1983 Municipal Liability Claim Against Douglas County

133.     Plaintiff hereby incorporates all prior paragraphs and allegations.

134.     Douglas County maintained a policy of withholding necessary and vital prescription medications from inmates during a period of "medication verification" which is not expedited on the basis of urgent need for medications.

135.     Douglas County also has no policy on the accommodation of special dietary needs time during which without regard for the urgency of their administration.

136.     Douglas County also has no policy requiring nursing staff to contact an outside physician or send an inmate to an emergency room if the doctor on duty at the jail is non-responsive to the medical needs of inmates.

137.    These policies, and/or lack of policies denied Ms. Markwardt and other inmates' vital medications that were needed on an urgent basis, as well as denied her medical treatment for obvious serious medical conditions and were the moving force causing Ms. Markwardt's injuries and damages.

**Third Cause of Action**
*Medical Negligence*
***(Colorado Common Law - Against Dr. Steininger, Dr. Adkinson, and All Defendant Nurses)***

138.    Plaintiff hereby incorporates all prior paragraphs and allegations.

139.    Defendant Dr. Steininger contracted to provide medical care to inmates of the Douglas County Jail, including Ms. Markwardt.

140.    In the absence of a special contract, the law implies that a physician or a nurse employed to treat a patient contracts with his patient that: (1) he possesses that reasonable degree of learning and skill which is ordinarily possessed by others of the profession; (2) he will use reasonable and ordinary care and diligence in the exercise of his skill and the application of his knowledge to accomplish the purpose for which he is employed; and (3) he will use his best judgment in the application of his skill in deciding upon the nature of the injury and the best mode of treatment.

141.    Defendant Dr. Steininger had a duty to perform his duties according to the the prevailing standards of care for physicians in Colorado.

142.    Defendant Dr. Steininger failed to perform his duty when he:

a.    Failed to perform any examination whatsoever of Ms. Markwardt despite being advised that she was above the threshold for the BWS eleven times during her ten-day incarceration;

b.  Failed to provide Defendant nurses with oversight and supervision to ensure they contacted him when Ms. Markwardt had acute medical events, such as the three separate times that she lost consciousness and/or had seizures;

c.  Failed to provide any examination whatsoever after learning that Ms. Markwardt had an acute medical event;

d.  Failed to provide Ms. Markwardt her necessary prescribed medications for ten consecutive days when he knew they were necessary to prevent seizures;

e.  Failed to transfer Ms. Markwardt to an emergency room after he became aware that she had a seizure and/or lost consciousness.

143.  Defendant Dr. Adkinson failed to perform his duty when he:

f.  Changed Ms. Markwardt's medications without ever talking to her;

g.  Failed to examine her after it was reported to him that Ms. Markwardt had a BWS-C Score of 14;

h.  He was advised that Ms. Markwardt had an acute medical event and he refused to examine her.

144.  Each of the Defendant nurses breached their duties of care to Ms. Markwardt when they:

i.  Failed to accurately record Ms. Markwardt's medical condition;

j.  Failed to notify the on-duty doctor of Ms. Markwardt's acute medical events, including her losses of consciousness and/or seizures;

k.  Failed to notify the on-duty doctor of Ms. Markwardt's serious medical condition at the latest after the third day of incarceration, by which time she had lost consciousness and her acute medical condition was obvious to anyone;

l.   Failed to ensure that MS. Markwardt obtained emergency medical care when it became obvious that the on-duty doctor did not intend to provide her with care;

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ms. Markwardt, prays for judgment to be entered against each of the defendants jointly and severally in an amount sufficient to compensate her for all of her injuries, damages, and losses together with pre-judgment interest at the highest rate allowed by law, for attorneys fees and for punitive damages pursuant to  Title 42 U.S.C> §1988, and for litigation costs including expert witness fees, and she reserves the right to request exemplary damages for state law claims, and for such futher reliefe the Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated this 11th day of November, 2021.

Respectfully submitted,
BAUMGARTNER LAW, L.L.C.

*s/ S. Birk Baumgartner*
S. Birk Baumgartner
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113
Phone: (303) 529-3476
Fax: (720) 634-1018
birk@baumgartnerlaw.com

Plaintiff's Address:
c/o Baumgartner Law, LLC
300 E. Hampden Ave., Ste. 401
Englewood, CO 80113